UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:18-cr-00311 |
| MARQUIS HOLMES, a/k/a "Goldie," | § § | |
| Defendant. | § | |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and Sebastian A. Edwards and Carrie Wirsing, Assistant United States Attorneys, and the defendant, Marquis Holmes ("Defendant"), and Defendant's counsel, pursuant to Rule **11(c)(1)(A)** of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to all Counts of the Superseding Information. Count One charges Defendant with **Conspiracy to Engage in Sex Trafficking by Means of Force, Fraud, and Coercion,** in violation of Title 18, United States Code, Section 1594(c), 1591(a)(1), (a)(2), and (b)(1); Counts Two and Three charge the Defendant with **Transportation to Engage in Prostitution,** in violation of Title 18, United States Code, Section 2421(a); and Counts Four and Five charge the Defendant with **Enticing and Coercing Another to Travel in Interstate Commerce for Prostitution,** in violation of Title 18, United States Code, Section 2422(a). Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the superseding information, or proved to a jury or proven beyond a reasonable doubt.

## Punishment Range

2. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 1594(c), is any term of imprisonment and up to Life and a fine of not more than $250,000. Additionally, Defendant may receive a term of supervised release after imprisonment of at least five years and up to Life. *See* Title 18, United States Code, sections 3559(a)(1) and 3583(k). The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 2421(a), is any term of imprisonment and up to ten years and a fine of not more than $250,000. The **statutory** maximum penalty for each violation of Title 18, United States Code, Section 2422(a), is any term of imprisonment and up to twenty years and a fine of not more than $250,000. Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for the entire term of supervised release, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United Stated Code, sections 3559(a) and 3583(k). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

3. Defendant understands that under the Sex Offender Registration and Notification Act, the Defendant must register and keep such information current in the jurisdictions where the Defendant resides, is employed, and is a student. The Defendant further understands that the requirement to keep the registration current includes informing such jurisdictions not later than three (3) business days after any change of the Defendant's name, residence, employment or student status. The Defendant understands that failure to comply with these obligations subjects the Defendant to prosecution for failure to register under federal law, specifically, Title 18, United

States Code, Section 2250, as well as applicable state statutes.

## Mandatory Special Assessment

4. Pursuant to Title 18, United States Code, section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

5. Pursuant to Title 18, United States Code, Section 3014(a)(3), if the court determines that the Defendant is a non-indigent person, the Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of five thousand dollars ($5000.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District clerk's Office, P.O. Box 61010, Houston, TX 77208, Attention: Finance.

## Immigration Consequences

6. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from

Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

## Appeal and Collateral Review

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final.

8. Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he may have received from his counsel, the United States or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office or the Court. The United States does not make any promise or representation concerning what sentence the defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

## The United States' Agreements

9. The United States agrees to each of the following:

(a) If Defendant pleads guilty to all Counts of the superseding information and persists in that plea through sentencing, and if the Court accepts this plea

agreement, the United States will move to dismiss, at the time of sentencing, all remaining counts of the superseding indictment, filed on January 10, 2019;

(b)     If the Court determines that Defendant qualifies for an adjustment under section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of section 3E1.1(a) is 16 or greater, the United States will move under section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his or her intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas Only

10.  The United States Attorney's Office for the Southern District of Texas agrees that it will not further criminally prosecute Defendant in the Southern District of Texas for offenses arising from conduct charged in the indictment. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas and Defendant. It does not bind any other United States Attorney's Office. The United States Attorney's Office for the Southern District of Texas will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

11.  The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a)     to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b)     to set forth or dispute sentencing factors or facts material to sentencing;

(c)     to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d)  to file a pleading relating to these issues, in accordance with section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, section 3553(a); and

(e)  to appeal the sentence imposed or the manner in which it was determined.

## Sentence Determination

12. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offense(s) to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

## Rights at Trial

13. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

(a)  If Defendant persisted in a plea of not guilty to the charges, defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may

be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.

(b)     At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and

(c)     At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

## Factual Basis for Guilty Plea

14. Defendant is pleading guilty because he is in fact guilty of all the charges contained in the superseding information. If this case were to proceed to trial, the United States could prove each element of all the offenses beyond a reasonable doubt. The following facts, among others, would be offered to establish Defendant's guilt:

In June 2015, Defendant Marquis Holmes a/k/a "Goldie" recruited victim MBR via Backpage.com, a classified advertising website that was a marketplace for buying and selling sex. Holmes drove to Austin from Houston in a white Honda Civic to pick up MBR and took her to Corpus Christi. At Holmes' direction, JD, his girlfriend/prostitute rented rooms at the Red Roof Inn (Corpus Christi), a facility in and affecting interstate commerce. JD acted as Holmes' "Bottom," which is a term that describes a prostitute who helps to manage the affairs of her pimp. Holmes informed MBR that she was going to engage in commercial sex acts and had to make approximately $1500 per day, all of which Holmes would keep. At Holmes' direction, JD posted MBR on Backpage and ECCIE. ECCIE is an online forum that allows clients to review the services of sex workers, much like Yelp allows customers to review restaurants. Holmes' use of Backpage

and ECCIE constitutes the use of facilities in and affecting interstate commerce. In Corpus Christi, MBR worked every day engaging in commercial sex acts and gave all the money she earned to Holmes or JD. If MBR did not meet her quota, Holmes would hit her in the face, kick her, and even spit on her. On one occasion in Corpus Christi, Holmes threw MBR into a wall. Holmes also deprived MBR of food, and she was permitted approximately four hours of sleep each day. If MBR slept too long, Holmes would drag her off the bed by her feet, causing her back to hit the ground. MBR was hospitalized in Corpus Christi with a kidney infection.

In August 2015, Holmes took JD and MBR on a commercial sex road trip that included stops in Austin, Corpus Christi, New Orleans, Mississippi, Alabama, South Carolina, Pittsburgh, and Memphis. In Alabama, Holmes recruited BF as another prostitute. MBR and BF performed commercial sex acts in each location and gave all the money to Holmes or JD. JD and MBR posted online commercial sex advertisements of MBR and BF as two-girl specials. The advertisements were paid for using prepaid cards that Holmes provided. Holmes used force and violence during this road trip in order to control MBR and BF. On one occasion in Mississippi or South Carolina, MBR got beat by Holmes for throwing money she had just earned at Holmes out of frustration.

When they returned to Houston in September 2015, Holmes put MBR and BF in a room at the Motel 6, a facility in and affecting interstate commerce. MBR and BF continued to engage in commercial sex acts using the websites Backpage, P411, and ECCIE, and gave Holmes all the money. Holmes continued to use violence as a means to control MBR and BF. BF received beatings for lying and trying to keep the money she earned. At one point, Holmes severely beat BF after MBR left because he thought BF knew MBR's location.

In October 2015, MBR became the "Bottom" after JD left, and she continued in this capacity until she stopped working for Holmes in April 2016. Holmes also continued his violence against

8

MBR in Houston. MBR received a beating from Holmes in the elevator of her building after he learned that she was talking to another pimp. After knocking her to the ground, Holmes kicked her in the back, causing her to lose feeling in her legs. On another occasion, Holmes grabbed her by the hair and threw her inside his car because she lost her ID and had to ask a "john" to get her a room for a commercial sex date. A "john" is term used to describe a prostitute's client. In or about April 2016, MBR permanently left Holmes and returned to her home in Dallas, Texas.

*Victim JA*

JA met Holmes via Instagram and agreed to meet him in-person on March 23, 2018, because he stated he could get her a job as an exotic dancer. Holmes picked up JA, who had her infant child, and brought her to his Houston home. For four days, Holmes kept JA at his home and broke her in by repeatedly hitting her. He also deprived her of food and restricted her ability to call home.

Holmes used another prostitute, KO, to encourage and entice JA to engage in prostitution. KO was aware of Holmes' physical violence against JA. On or about March 27, 2018, Holmes, KO, and JA went to a T-Mobile store, where Holmes purchased a phone for JA and installed a tracker on the phone. Holmes then took her to Bissonnet Street, gave her three condoms, and forced her to walk the street soliciting individuals for sex. Bissonnet Street is commonly referred to as the "Track," an area well-known for prostitution. While JA was on the Track, Holmes used a family member, who was aware of his sex trafficking activities, to watch JA's baby. For the next two days, JA conducted multiple commercial sex dates under the threat of violence by Holmes and made several hundred dollars, all of which she gave to Holmes. Holmes tracked her movements and communicated with her via text messages and cell phone calls. A cell phone is a facility in and affecting interstate commerce.

9

On March 28, 2019, Holmes picked JA up from Bissonnet Street and punched her in the nose because she was "playing with his money." After she jumped out of the car and sought refuge in a Taco Bell, Holmes gave chase and dragged her back to his vehicle kicking and screaming. Once inside the vehicle, he beat her. After this incident, Holmes used a family member, who was aware of his sex trafficking activities, to harbor JA and her baby until the following day.

Holmes brought JA and her baby back to his residence the night of March 29, 2018. The following morning, Holmes informed JA that he was taking her to Bissonnet Street around noon to work. Before they departed, the Houston Police Department rescued JA and her infant child while conducting an arrest at Holmes' residence. KO was also in the residence.

### Breach of Plea Agreement

14. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United

States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

15. This Plea Agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest. Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

16. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 14 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

17. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents

necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

18. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Restitution

19. Defendant agrees to pay full restitution to the victims regardless of the counts of conviction. Defendant understands and agrees that the Court will determine the amount of restitution to fully compensate the victims. Defendant agrees that restitution imposed by the Court will be due and payable immediately and that Defendant will not attempt to avoid or delay payment.

### Forfeiture

20. Defendant stipulates and agrees that the property listed in the Superseding Information's Notice of Forfeiture (and in any supplemental Notices) is subject to forfeiture, and Defendant agrees to the forfeiture of that property.

21. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

22. Defendant consents to the order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

### Fines

23. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any

imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment.

**Complete Agreement**

24. This written plea agreement, consisting of 16 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

25. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at Houston, Texas, on June 13, 2019.

_____
Marquis Holmes
Defendant

Subscribed and sworn to before me on June 13, 20 .

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _____
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

By: _____                _____
Sebastian A. Edwards                          Joshua Lake
Carrie Wirsing                                Attorney for Defendant
Assistant United States Attorneys
Southern District of Texas
Telephone: (713) 567-9503

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. 4:18-cr-00311 |
| MARQUIS HOLMES a/k/a "Goldie"<br>Defendant. | § § § | |

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending superseding information. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____    6/13/19
Joshua Lake
Attorney for Defendant              Date

I have consulted with my attorney and fully understand all my rights with respect to the indictment pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement

15

with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____    6.13.19
Defendant                          Date